Good morning. May it please the court, Jonathan Libby appearing on behalf of appellant Matthew Dupas, though some members of his family do pronounce it Dupas. I'd like to begin by discussing the suppression issue. Our position, Your Honor, is that Mr. Dupas's conviction must be reversed because police lack reasonable suspicion to stop his vehicle on any basis. None of the California vehicle code violations cited by the government weren't supported by the evidence. First, with respect to there being no front license plate, there was no evidence adduced that the car Mr. Dupas was driving was a car registered in California such that it was required to have a front license plate. Isn't that implicit though? I mean can't that be deduced logically from the fact of where he was stopped and that no one noticed he had other than a California license plate? DUPAS I don't believe so, Your Honor. I mean this court in Twilley even addressed a situation where in California you had a Michigan car or a car registered in Michigan and an officer stopped it thinking that it needed a front license plate and it didn't. So certainly there are instances where a car can be DUPAS Okay, what we're talking about, we're not talking about proving the violation of having no front license plate. Doesn't that make a difference in terms of, I mean we're talking about probable cause, right? So doesn't that make a difference in terms of, I mean, whether, it's not whether there's an element deficient. I mean the testimony is that he had no front license plate, he was weaving within the lane and failure to signal, correct? DUPAS Correct. But the mere fact that there was no front license plate doesn't mean the car was registered in California such that it was required to have a front license plate. There needed to be evidence that the officer was aware that the car was registered in California. Otherwise there was no basis to perform a stop. There was no... JUSTICE SCALIA When did the fact that the car was registered in California come into the case? DUPAS Beg your pardon? JUSTICE SCALIA I say where did the fact that the car was registered in California first come into the case? DUPAS Not in the case, Your Honor. JUSTICE SCALIA There was no evidence at all of it? DUPAS There was no evidence whatsoever that the car was registered in California. JUSTICE SCALIA Now, as I understand the testimony, the officer saw the oncoming car, and this was at night, was it not? DUPAS This was at 4 o'clock in the morning. JUSTICE SCALIA Sorry, 4 o'clock in the morning. And, of course, the headlights were on the front part of the car and, but at some point he observed that there was no front license plate. Of course, the judge found, as a matter of fact, that there was no front license plate, and that was observed by the officer and gave him reason to act. What's wrong with that finding? DUPAS The mere fact that the car... JUSTICE SCALIA I mean, it may not be, it sounds kind of unbelievable to me, but I can't second-guess the trial judge. DUPAS But the mere fact that the car did not have a front license plate does not mean he violated the California Vehicle Code. JUSTICE O'CONNOR But why wouldn't someone have reasonable suspicion of that? In other words, you're in California and a car is driving towards you with no front license plate, okay? By definition, since there's no license plate, you can't tell whether it's registered in California, but don't you have a reason, in view of the millions of people that live here and the fact that, you know, 95 percent of the people who drive here have cars registered here, why isn't that reasonable? DUPAS Well, it's not a matter of 100 percent provable. It's that there's no violation. There's not reasonable suspicion of any type of crime. JUSTICE O'CONNOR Why isn't there reasonable suspicion? I understand your argument that there's not necessarily a crime, but I don't understand why there isn't reasonable suspicion to believe that the car coming towards you that has no license plate, driving in California, reasonably suspect that that's a California car. DUPAS Well, I think you can certainly, the officer can certainly begin to follow the vehicle and make the determination if the car is registered in California. The police officer pulls behind the vehicle. JUSTICE O'CONNOR Well, if there's no front plate and the person makes, doesn't signal and is weaving within their lane at 4 a.m. in the morning, why is that not reasonable cause to detain someone to check to see if they're under the influence of alcohol? DUPAS Well, I can certainly move on to the suspicion of DUI argument, but I just want to reiterate the fact that Arizona, our neighbor here, does not require a front license plate. It certainly is not unusual to see Arizona cars on California streets. JUSTICE O'CONNOR Why don't you move to Judge Callahan's question? DUPAS In terms of the evidence of driving under the influence, we have somewhat conflicting testimony from the officer. The officer says that Mr. Dupas was driving extremely carefully and that he was driving under the speed limit. Well, driving carefully, driving under the speed limit, that's certainly not. JUSTICE KENNEDY But also he was swerving back and forth from one, with a tire on one line and a tire on the other line. DUPAS Now, under this court's decision in Collin, the fact that a car had used within its lane and may touch the median line does not raise reasonable suspicion of driving under the influence. JUSTICE KENNEDY But in that case, the following was very brief. And here, I believe it was something like two miles, a very long period of time. DUPAS Well, and this is where it gets confusing. This is where we have the conflicting testimony as a problem, because what the officer said was he had been following from the moment he saw the car pass him for a split second without the front license plate. He then began to follow him. And he followed him as he was following all traffic regulations, as he was driving extremely carefully. It's not clear at what point there was this weaving. He didn't testify that he was weaving for this entire two miles or for this entire five-minute period. We don't know how long that was. There was absolutely no evidence that this was pronounced weaving for a substantial period. And under Collin, this Court has said that would be the only basis to conduct a stop for driving under the influence. And of course, another factor in the driving under the influence is what did the officer do once he in fact stopped the car? Did he conduct a field sobriety test? Did he do anything to suggest that he believed that the driver had been driving under the influence? And here, the officer testified, no. I didn't even ask him if he had been drinking. So that suggested very clearly under Collin that there was no basis to stop for driving under the influence. And in terms of the duration of the signal, we have a situation where, first, this was at a stop sign. Mr. Dupas came to a complete stop at a stop sign and in fact used his turn signal and made a left-hand turn. The officer says he did that because he had not made, started the turn signal within 100 feet of the intersection. But the law is also very clear in California that you don't have to make a signal unless it would affect another vehicle. And there was no way. Well, wasn't the rationale of the district judge that the police car driven by Officer Harvey was the oncoming traffic behind the car? Well, the Court's finding is actually not clear. The Court does not go into really any detail in terms of why it found the way it did. It pretty much said, I find the officer was credible and I find that there's no basis to suppress. But there certainly, I don't believe that the police officer's car can be considered another vehicle for purposes of this statute. In Marisco, this Court, which was looking at the similar Arizona statute, which had virtually identical language, said, no, that's not enough. And here, of course, you're at a stop sign and every vehicle, including the police car, has to stop at the stop sign. So how could the vehicle, even if it is the police car, be affected by a turn? You have to stop. So it's not going to be affected. So there was no violation of any vehicle code section. And as a result, there was no basis for the stop and the motion to suppress should have been granted. Unless there's any further questions on that issue, I'll turn to the sentencing issues. With respect to sentencing, in light of Booker, I don't think there can be too much debate that resentencing must be ordered in this case. This is a textbook example of a Sixth Amendment violation. The parties stipulated that the loss in this case was less than $5,000, that there should be no enhancement for loss, and the government proved no loss because it could not. It stipulated in the plea agreement that there was no loss. The Court, on its own, made independent fact findings based on evidence that had not been submitted to it by the government as to loss and increased Mr. Dupas' sentence significantly. In fact, the government had recommended a sentence in this case of 10 months. The Court imposed a sentence of two and a half times that. And the sentence imposed at 24 months was 50 percent greater than the 16 months, which was the high end of the applicable guideline range that should have been imposed. Now that the guidelines are only guidelines and discretionary, I mean, I guess this is sort of a philosophical question on my part. Why isn't it likely that he'll give the same sentence again? I mean, that doesn't answer the question of what we ought to do about it, but isn't that likely? Well, I don't think that's likely, Your Honor. I believe what the judge did here was sentence him at the low end of the guideline range that he calculated it to be, but that was an incorrect calculation. The correct advisory sentencing guideline calculation would be a range of 10 to 16 months because the government proved no loss. And the Court still, in calculating an advisory guideline determination, I don't think can consider loss that's not been imposed. But if it's only advisory, can't he then say, I think the activity is worse or whatever? He certainly could, if it's advisory. Now, in our supplemental brief, we've argued that that, in fact, would be a violation of ex post facto principles as applied to the due process clause under Bowie, that Mr. Dufus is entitled to benefit from Booker's constitutional ruling, but that the remedial portion of Booker cannot be applied to him in this case because it would disadvantage him because the Court, I mean, the Court changed the Sentencing Reform Act. It amended it. And this was unexpected and indefensible in terms of what the law was at the time the offense was committed. Well, is your argument on that, that you, that your client seeks to require that his sentence be enhanced only by a jury determination on the amount of loss and that he be resentenced under the mandatory guidelines? That's correct. That to apply the advisory sentencing guideline scheme under the remedial portion of Booker would effectuate, it would be a due process violation. Well, so isn't that the, I mean, aren't you sort of asking for the benefit of Justice Stevens' opinion in Booker without the burden of Justice Breyer's opinion? Absolutely, Your Honor, because the Justice Breyer's opinion, in fact, effectuated an ex post facto violation, which in terms of sentencing decisions, violates due process. And that's what the Supreme Court held. So what you're really saying is don't follow what the Supreme Court majority held because we think it was wrong. I mean, that's really what you're saying. It sounds like you're saying that Justice Breyer's opinion has to be incorrect because it doesn't apply. It can't be applied retroactively is what we're saying. And this would be a retroactive application of a new law. But he specifically holds in that opinion, doesn't he, that it applies to all cases that are on appeal. Absolutely. Okay. And this case is on appeal. Well, we still have the Constitution, what's that? Well, he did, but it never, the Court never addressed ex post facto principles. So we should decide that the U.S. Supreme Court was unconstitutional. No, Your Honor, we're not saying that the Supreme, because the Supreme Court simply didn't address it because it wasn't an issue in the case. It wasn't raised. You can't presume the Court. But if he said it applies to all cases. Yes, well, of course it applies to all cases. All constitutional decisions apply prospectively, but they can't be applied to the detriment of a defendant. And that's what's happening here if you send it back and allow him to be sentenced under 85, he was sentenced to 16 months. Even though that's exactly what happened in Booker? Well, we don't know that that's happening in Booker, Your Honor, because it's not yet been remanded. They simply did not address the ex post facto situation. We've raised it here because Mr. Dukas has already completed the 16-month sentence. So it would be if he would not be able to at all receive the benefit of our argument. If you were to say that there was an ex post facto violation, he would be able to get back to resentencing and receive some benefit. Otherwise, it would be completely moved. Sorry. It's okay. And I see my time. That wasn't a comment on your argument. It came apart. My time is expired. Okay. Thank you very much. We'll hear from the government. Mr. Lee. Good morning, Your Honors. May it please the Court. Richard Lee for the United States. I just wanted to start this morning by addressing some of the issues raised by appellant's counsel in his opening remarks. First of all, with regards to the initial stock, the standard is, did the officer have reasonable suspicion? And as set forth in the government's papers, there were three traffic violations on which an objective police officer could have relied. The first is the lack of a front license plate. Much has been made about the Twilley case on which the appellant's counsel relies for his argument. In Twilley, there was actual evidence in the evidentiary record that the officer saw a Michigan license plate, and he relied on a different vehicle code violation than the one at issue in here. He actually believed in Twilley, the officer, that the license plates in Michigan had to be issued two license plates per car. And since the vehicle wasn't given or didn't display two license plates, the court held that was a mistake of law, that Michigan didn't actually require two license plates to be issued. Officer Harvey didn't make a mistake of law in this case, Your Honor. California does require two license plates to be issued. And that Mustang on that evening only displayed one of them. This isn't a question that there is a mistake of law. This case is readily distinguishable from Twilley. First of all, or furthermore, rather, if you look at the evidentiary record as a whole, it's clear that the inference can be drawn that it was a California license plate. The car is traveling on a California road. The officer was traveling behind the vehicle, directly behind him at one point, and followed the vehicle for two miles and approximately five minutes. It is a logical inference. Well, in this day and time, do we always assume that the cars going along are local cars? I mean, California is a big state. It's a lot bigger than Missouri, and I live four blocks from the state line. So, you know, different license plates are not unique, I think, any place in the United States. And I agree with you, Your Honor. That's absolutely true. But the evidentiary record in this case supports the inference that this car did have a California license plate. The code section relied on, by Officer Harvey, was a California code section regarding the issuance of two California license plates. And I think that this Court doesn't have to remand to the District Court for that additional factual finding of was it actually a California license plate that you saw that evening, because I think that the inference is there. With regards to the DUI stop, much has been made about this so-called conflicting testimony. I don't believe that there is any conflicting testimony here. The testimony is actually very consistent. What we have here is, on the one hand, Officer Harvey saying that the Mustang was driving in a careful and methodical manner, and on the other hand, that it was swerving and weaving within its own lane. Those are not mutually inconsistent, and that is a false dichotomy. Someone who is inebriated and then chooses to get behind a wheel, even knowing that they shouldn't, will naturally drive in a more careful, self-conscious manner. Furthermore, if someone knows that a police officer is traveling behind him, as the record here shows that Officer Harvey testified the driver was driving in a manner consistent with him believing that a police officer was behind him, that person also will drive in a more self-conscious manner. That's not inconsistent with weaving repeatedly over a period of two miles and swerving within the lane. And this case is very different than the case of United States v. Collin. As the court rightly pointed out, in that case, the court held that the observation of weaving over a 35-second period of time was woefully insufficient. But in reaching that conclusion, it relied on a California Supreme Court case, People v. Perez. And in that case, the California Supreme Court held that an officer's observations of weaving over a three-quarter mile period was a substantial distance and able to support reasonable suspicion for an investigatory stop. Well, in this case, the evidence is much stronger than both Perez and Collin. We have more than three-quarters of a mile. We have about two miles here. And we have more than 35 to 45 seconds. We have about five minutes. I believe that the officer had reasonable suspicion to pull the vehicle over for DUI. And whether or not he conducted a field sobriety test, I think, is not really germane at this point. The officer did testify that the reason he didn't conduct a field sobriety test was because when he talked to the driver of the vehicle, he didn't observe any objective signs of intoxication, such as watery eyes. So he was, in fact, pulling the vehicle over to further his DUI investigation, and he did what a reasonable police officer would do when he didn't see any indications of inebriation or some other type of hindrance to driving. With regards to the third basis for the vehicle stop, the left turn, the case that's cited and relied on is United States v. Marisco. I just want to point out the facts of that case. In that case, the suspect vehicle was pulling up to the intersection. At the time it approached the intersection, the police vehicle was already stopped at a stop sign and stationary. It was not moving, and it just waited there. The suspect vehicle then made a right turn, at which point the police vehicle made a U-turn and then followed the vehicle and then stopped the vehicle. Those facts are a far cry from what we have here. What we have here is Officer Harvey falling directly behind the vehicle. The main criticism of Marisco was from the position of the police vehicle, there's no way that this police vehicle could have been affected by the right turn of the suspect vehicle. The court there held that a turn signal wasn't necessary. In looking at all of this, we don't have to really decide, is he guilty of no front license plate? Is he guilty of weaving within the lane? Is he guilty of failure to signal, according to that? We're looking at how all of that comes together and whether he had reasonable suspicion and probable cause to make the stop, right? That's absolutely correct, Your Honor. This court is not tasked with deciding whether or not these vehicle code violations actually occurred. You only need to decide whether or not there was, based on these facts, reasonable suspicion for the officer to conduct an investigatory stop. And this court only needs to find reasonable suspicion as to one violation. It doesn't need to reach the question of all three if it doesn't want to. But I submit to the court that there is reasonable suspicion to support all three violations. I would like to touch very briefly on the supervised release condition relating to payment of costs. I had a question about that. That was not an issue raised below, was it? That's correct, Your Honor. So we are reviewing for plain error? Yes, Your Honor. Okay. In fact, the defendant is attempting to analogize with the Mandatory Victim Restitution Act. That act is very specific, and it specifically requires the court to make the determinations as to the schedules of restitution, to whom restitution is owed, the amounts that restitution is owed. In contrast, the authority for ordering payment of costs for treatment relating to drug abuse or alcohol abuse comes from 3742. Section 3742 is a permissive section. It says that the court may order these things. So that's one distinction that I would point out. But it says the court may order them. That's right, Your Honor. But it's not as my point in pointing that out is that it's not as restricted as the Mandatory Victim Restitution Act, which requires in painstaking detail that the court shall require this, the court shall find this, et cetera, et cetera. I'm sorry, Your Honor. 3672 is the code section citation for the payment of costs. Right. And that is the order is permissible only if the court finds certain things. It says, right, that's correct, Your Honor. When the court finds that certain funds for payment are available, the court may direct those funds. But that language is different than the Restitution Act, which requires that the court shall order restitution. The court shall order a schedule. The court shall delineate the amount. But here, even in this statute, only the court may make the finding that funds are available, at least if you read the literal words of the statute. That's correct, Your Honor. But I think that this court can adopt the reasoning of the Fifth Circuit case, which addressed this issue, and has cited in our briefs. Well, to me, that seems like the key, because that's why I asked you what I did about plain error, because there's at least one circuit that has agreed with the government's position in this case on this issue. And in that situation, it's harder to find plain error, I guess, would be the observation, even if you turn out ultimately to be wrong in a case that, you know, squarely presents it to us. That's the government's position in a nutshell, Your Honor. Well, you're agreeing on some level that remand is necessary, correct? Under the current state of the law, yes, Your Honor. I believe that these facts, remand is necessary. The government has filed its petition for rehearing of Ameline 2. As of yesterday, I don't think that that petition had been ruled on. I think in the government's papers, we've asked the court to stay resolution of this matter pending the outcome of that. However, in the event that the court doesn't choose to do that, I do think these facts suggest remand is necessary under Ameline. Ameline does not raise, if I understand it correctly, the creative buoy argument that we have heard today. Do you agree or disagree with that? I haven't had the opportunity to fully brief that. On a cursory review, I disagree with that analysis. It's well settled that ex-post facts are wrong. I'm asking you whether that issue is raised in Ameline, or is that something that, regardless of Ameline, this panel will have to wrestle with? I don't believe that it was raised in Ameline. And second, I don't believe that this panel needs to resolve that issue. I don't think that this is an issue that's properly preserved for this court. I think the court can simply remand to the district court, let the district court take a first crack at that issue, and should the issue resurface again, it would come back preserved as a second appeal. But just with regards to ex-post facto principles in general, ex-post facto principles typically only apply to substantive changes in the law, not procedural changes. Booker, by its very definition, is a giant procedural change. We've changed how we're having the sentencing guidelines operate and what utility they will be for the district courts. So just on a very fundamental level, I don't think that the ex-post facto argument is well taken. However, if the court does want to address those issues, I'd be happy to provide supplemental briefing to address those points. But since it came as a supplemental brief, I don't think that, number one, this court needs to address those issues in order to remand the case. And I don't think that those points are well taken. Does the court have any other additional questions with regards to any of the supervisory issues? Well, if we rejected that argument, do you want to address it? I'm sorry? If we rejected his due process argument and ex-post facto argument, do you still want an opportunity to address it? If the court's already going to reject it, then I suppose I don't need an opportunity to address that particular argument. I just wanted to end by clearing up one factual confusion that may have occurred in the briefing. In the underlying case, this is not a situation where there was a binding plea agreement. This was a generic plea agreement. It wasn't set forth under the binding section in Rule 11. Even though Judge Carter ultimately treated it as a binding plea agreement, gave the defense an opportunity to withdraw their plea, there was nothing in this agreement that made it binding for the court, that it must order a particular sentence. And second of all, the plea agreement does allow the government, even though it's bound by its stipulations to make certain sentencing recommendations, to provide facts to the court and the probation officer. So I take some issue with the defendant's position that the government is precluded from presenting evidence to the court. I believe under the plea agreement we're still allowed to do that. But again, those are issues, I think, more properly before the district court than this particular court. Thank you, Your Honor. Thank you, counsel. You set your time, but we'll restore one minute for rebuttal if you'd like to take it. Thank you. Your Honor, with respect to the suppression issue, what appears to have been lost in the entire discussion from the government is that the government had the burden to prove that there was reasonable suspicion on any of these grounds. And with respect to the front license plate, we don't know if the officer saw another state's license plate when he was falling behind. We can't presume that he saw it was a California plate. It very easily could have been another state's license plate. And he simply was mistaken on the law. And a mistake of law is the basis to find that there was a Fourth Amendment violation. In terms of the DUI, the testimony wasn't that weaving was for a lengthy period. The testimony was silent as to when or how long this weaving took place. There was no testimony that it was for the entire period of time, as the government counsel just suggested. We don't know how long it took. So there was no evidence that it was pronounced weaving for a significant period. And I see my time has expired. Thank you, counsel. We appreciate the arguments of both parties. They've been quite helpful. The case just argued is submitted. We'll turn to United States v. Scher. And Mr. Levy, I guess, doesn't have to go far.
judges: Gibson, Graber, Callahan